IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BWAY CORPORATION, UNITED RENTALS, INC., PRIMESOURCE BUILDING PRODUCTS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, <br><br> Defendant. | No. |

**COMPLAINT**

Plaintiffs BWAY Corporation ("BWAY"), United Rentals, Inc. ("United Rentals"), and PrimeSource Building Products, Inc. ("PrimeSource"), by and through their attorneys Seyfarth Shaw LLP, Morgan Lewis & Bockius LLP and Vedder Price P.C., for their complaint against Defendant Central States Southeast and Southwest Areas Pension Fund (the "Fund" or "Defendant"), state as follows:

**INTRODUCTION**

1. This action for declaratory and injunctive relief arises out of a multiemployer pension plan's assessments of withdrawal liability against Plaintiffs. On January 15, 2019, the Fund issued three separate notices and demands for payment of withdrawal liability (each a "Notice" and collectively, the "Notices"): (a) a Notice alleging a partial withdrawal in 2014 (the "2014 Assessment"); (b) a Notice alleging a partial withdrawal in 2015 (the "2015 Assessment"); and (c) a Notice alleging a complete withdrawal in 2018 (the "2018 Assessment").

2. The Fund asserts that PrimeSource, BlueLine Rentals, LLC ("BlueLine"),[1] and BWAY Corporation were part of a commonly controlled group of trades or businesses during various periods of time and, thus: (a) BlueLine and BWAY are jointly and severally liable for the 2014 Assessment; (b) BlueLine, BWAY, and PrimeSource are jointly and severally liable for the 2015 Assessment, and (c) PrimeSource and BlueLine are jointly and severally liable for the 2018 Assessment.

3. Given that BWAY, BlueLine and PrimeSource never were part of a controlled group, they are not jointly and severally liable for the Notices as alleged.

4. Plaintiffs thus bring this action for declaratory and injunctive relief for a finding that neither BWAY, PrimeSource, or BlueLine (nor any of their own respective commonly controlled trades or businesses) were commonly controlled trades or business with each other such that they constituted a single "employer" and thus would be jointly and severally liable for withdrawal liability. Plaintiffs further seek relief from having to make withdrawal liability payments upon, to defend and arbitrate against those assessments to which they are not the employer, seek the refund with interest of the withdrawal liability payments made based upon the Fund's determination that the Plaintiffs were a commonly controlled group of trades or businesses, seek their attorneys' fees and costs, and seek all other appropriate relief.

5. Pursuant to Section 4301(g) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1451(g), Plaintiffs served the Pension Benefit Guaranty Corporation with a copy of this Complaint by certified mail addressed as follows: Chief Counsel, Office of the

---

[1] As explained below, United Rentals later acquired Vander Holding Corporation and its affiliates (which included BlueLine) in a stock transaction in 2018 after BlueLine triggered a complete withdrawal in early 2018.

Chief Counsel, Pension Benefit Guaranty Corporation, 1200 K Street, NW, Washington, DC 20005-4026.

## JURISDICTION

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims asserted in this Complaint arise under the provisions of ERISA, 29 U.S.C. § 1451(a)(1) and (c); and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

## VENUE

7.     Venue is appropriate in this judicial district pursuant to ERISA, 29 U.S.C. § 1451(d), and 28 U.S.C. § 1391 because the Fund resides and does business in this judicial district.

## PARTIES

8.     BWAY is engaged in the commercial packaging business. BWAY is a Delaware corporation, with its headquarters and principal place of business in Oak Brook, Illinois.

9.     United Rentals is an international equipment rental company. United Rentals is a Delaware corporation with its headquarters and principal place of business in Stamford, Connecticut.

10.    PrimeSource is a global distribution company, with its headquarters and principal place of business in Irving, Texas.

11.    Defendant is a multiemployer pension plan within the meaning of ERISA, 29 U.S.C. § 1002(37) and 29 U.S.C. § 1381 *et seq*. Defendant has an administrative office in Rosemont, Illinois.

## FACTS

**I.     RELEVANT ERISA PROVISIONS**

12.    The Multiemployer Pension Plan Amendments Act ("MPPAA"), part of ERISA, provides that an "employer" who "withdraws" from a covered pension plan may become liable for

an amount of money designed to cover some of the plan's vested, but unfunded, benefits (the "withdrawal liability"). 29 U.S.C. §§ 1381(a), 1382. A complete withdrawal occurs if an employer (1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan. 29 U.S.C. § 1383(a). A partial withdrawal occurs when an employer (1) has a 70-percent contribution decline, or (2) there is a partial cessation of the employer's contribution obligation as defined by MPPAA. 29 U.S.C. § 1385(a)-(b).

13. After a multiemployer pension plan determines that an employer has withdrawn, the plan must issue a notice and demand for payment of the employer's complete withdrawal liability. The notice must include a schedule of payments. 29 U.S.C. § 1399(b)(1). If the employer contests the plan's withdrawal liability determination, it may initiate arbitration. 29 U.S.C. § 1401(a)(1). Further, under ERISA's "pay now, dispute later" provision, the employer must make "interim withdrawal liability payments" on the disputed withdrawal liability determination until the arbitrator issues a "final decision." 29 U.S.C. §§ 1399(c)(2), 1401(d). Failure to make the "interim payments" may subject the employer to a civil action in federal court to compel payment. 29 U.S.C. § 1451(b), (c).

14. Under the MPPAA, members of a common controlled group are jointly and severally liable for the withdrawal liability of a multiemployer pension plan so that employers cannot avoid liability by separating into entities. In that regard, Section 4001(b)(1) of ERISA provides that "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." As a result, trades and businesses operated under common control are considered a single entity, and are jointly and severally liable for each other's

4

withdrawal liability. ERISA also requires that the contribution history of all members of a controlled group be aggregated for purposes of determining whether a partial or complete withdrawal has occurred and in determining the amount of the withdrawal liability.

15. Trades or businesses are considered to be under "common control" for purposes of Section 4001(b)(1) of ERISA (and thus referred to as "controlled group members") if the same five or fewer persons own at least 80% of the total combined voting power of all classes of stock entitled to vote or at least 80% of the total value of shares of all classes of stock of those entities. Treas. Reg. § 1.414(c)-2(c) and Internal Revenue Code Sections 414(c) and 1563 (the "brother-sister test"). For these purposes, if five or fewer non-individuals (such as an organization, partnership, corporation, estate and/or trust) own at least 80% of the total value of shares of all classes of stock of those entities, then pursuant to Treas. Reg. § 1.414(c)-4, additional regulations would apply when attributing ownership interests from such organizations, partnerships, corporations, estate and/or trust to the individuals who own such entities.

16. Treas. Reg. § 1.414(c)-2(b) also considers trades or businesses to be controlled group members for purposes of Section 4001(b)(1) if they are part of "chains of organizations conducting trades or business connected through ownership of a controlling interest with a common parent organization." Treas. Reg. § 1.414(c)-2(b) (the "parent-subsidiary test"). For these purposes, a "controlling interest" means: (a) in the case of a corporation, ownership of at least 80% of the voting power or value of such corporation, (b) in the case of a trust, ownership of an actuarial interest of at least 80% of such trust, or (c) in the case of a partnership, ownership of at least 80% of the profits or capital interest of such partnership, or (d) in the case of a sole proprietorship, ownership of such sole proprietorship. Treas. Reg. § 1.414(c)-2(b)(2). The requirement under the parent-subsidiary test that parent-subsidiary groups be connected through

5

chains of organizations, each of which is conducting trades or businesses, is in contrast to the requirements under the brother-sister test, which requires that two or more organizations conducting trades or businesses are ultimately owned by five or fewer individuals who hold the requisite percentage of ownership, regardless of whether those five individuals are conducting a trade or business. Treas. Reg. § 1.414(c)-2(c).

17. Because the MPPAA only requires arbitration of disputes between an "employer" and a plan, 29 U.S.C. § 1401(a)(1), this Court can determine whether an entity is an MPPAA "employer" (including through application of the controlled group rules under Section 4001(b)(1) of ERISA) subject to withdrawal liability and its related obligations. *See e.g.*, *Cent. States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1373 (7th Cir. 1992); *Cent. States, Se. & Sw. Areas Pension Fund v. Personnel, Inc.*, 974 F.2d 789 (7th Cir. 1992). For example, if a plan issues an Assessment against the "Easter Bunny" in its capacity as an alleged controlled group member of a contributing employer, and therefore as an "employer," the Court can resolve the question whether the Easter Bunny is a member of the contributing employer's controlled group and whether it is, as a result, subject to any withdrawal liability and any related interim payment and arbitration obligations. *See Slotky*, 956 F.3d at 1372-73.

18. Thus, the claims asserted in this Complaint may be adjudicated by this Court because Plaintiffs are not commonly controlled trades or businesses that would constitute a "single employer" within the meaning of the MPPAA, 29 U.S.C. §§ 1381 *et seq*.

## II. PLAINTIFFS' SHAREHOLDERS DURING THE EVENTS IN QUESTION

19. Platinum Equity is a global private equity firm that specializes "in mergers, acquisitions, and operations of companies that provide mission-critical products, services, and solutions in diverse industries." See https://www.platinumequity.com/company. Platinum Equity caused certain private equity funds to be formed: Platinum Equity Capital Partners III, L.P.

6

("PECP"), Platinum Equity Capital Partners III-A, L.P. ("PECP-A"), Platinum Equity Capital Partners III-B, L.P. ("PECP-B"), Platinum Capital Partners III-C, L.P. ("PECP-C" and, together with PECP, PECP-A, and PECP-B, "Platinum III Funds"), Platinum PriSo Principal ("PriSo Principals"), Platinum Vander Principals, LLC ("Vander Principals"), and Platinum BOE Principals, LLC ("BOE Principals").

20. None of the Platinum III entities, nor any of the entities or individuals that made investments as limited partners through the Platinum III entities, that ended up owning interests (directly or indirectly) in Plaintiffs, were conducting trades or businesses, as each were making mere passive investments in the parent LLCs.

21. In November 2012, various Platinum III Funds and BOE Principals invested in BOE Holding Corporation and its subsidiaries, which included BWAY. BOE Holding Corporation and its controlled group was then sold in August 2016.

22. In January 2014, various Platinum III Funds and Vander Principals invested in Vander Holding Corporation and its affiliates and subsidiaries, which included BlueLine. BlueLine permanently ceased contributions to the Fund in January 2018, which triggered a complete withdrawal. Vander Holding Corporation (including BlueLine and several subsidiaries and affiliates) was later sold to United Rentals on October 31, 2018.[2]

23. In May 2015, various Platinum III Funds and the PriSo Principals invested in PrimeSource Holding Corporation and its subsidiaries, which included PrimeSource Building Products, Inc.

24. When Plaintiffs had various Platinum III Funds as shareholders, the percentage breakdown by fund was as follows:

---

[2] BlueLine was merged into the United Rentals corporate structure as part of the acquisition.

7

|  | PrimeSource | BlueLine | BWAY |
|---|---:|---:|---:|
| PECP | 73.166% | 73.666% | 71.540% |
| PECP-A | 5.515% | 5.552% | 5.390% |
| PECP-B | 7.596% | 7.648% | 7.420% |
| PECP-C | 7.723% | 7.776% | 7.550% |
| PriSo Principals | 6.000% | 0.000% | 0.000% |
| Vander Principals | 0.000% | 4.981% | 0.000% |
| Platinum BOE Principals, LLC | 0.000% | 0.000% | 4.840% |
| Others (unrelated individuals with ownership) | 0.000% | 0.376% | 3.260% |

25. BWAY, BlueLine and PrimeSource were never commonly controlled trades or businesses and thus cannot be considered to be a "single employer" or be jointly and severally liable for each other's withdrawal liability. Rather, each of BWAY, BlueLine and PrimeSource were indirectly owned by a group of limited liability companies that collectively had over 140 investors, the overwhelming majority of whom were entity investors, including state retirement pension plans or state governmental agencies, investment arms of sovereign wealth funds and institutional investors.

26. The brother-sister test is inapplicable because, at all relevant times, the five largest limited partner investors of the collective entities that owned PrimeSource, BlueLine and BWAY together have owned interests representing less than 30% of the aggregate ownership interests in such PrimeSource, BlueLine and BWAY (which is notably nowhere close to the 80% required for purposes of this test, even if such entities were each owned by, or had beneficiaries that were, a single individual; in fact, each such entity has its own large diverse group of owners/beneficiaries, thus diluting the relevant ownership percentages even further). In addition, none of these five

8

limited partners shared common ownership with any other of the other four limited partners, and none had common shareholders, partners, members, trustees or beneficiaries, in either case, that would be treated as aggregated or excluded under the applicable controlled group rules.

27. Moreover, the parent-subsidiary test is inapplicable because none of the entities that owned interests (directly or indirectly) in PrimeSource, BlueLine or BWAY were conducting trades or businesses, as each was making mere passive investments in such entities. *See Comm'r of Internal Revenue v. Groetzinger*, 480 U.S. 23, 35 (1987); *Whipple v. Comm'r of Internal Revenue*, 373 U.S. 193, 202-203 (1963); *Higgins v. Comm'r of Internal Revenue*, 312 U.S. 212, 218 (1941). However, even "if" such entities were found to be conducting trades or businesses, the parent-subsidiary test would still fail to be met because no single entity owned 80% or more of PrimeSource, BlueLine and BWAY at any relevant time.

### III. THE NOTICES

28. In 2008, BWAY completely withdrew from the Fund and on July 16, 2009 the Fund issued a Notice and Demand for Payment of Withdrawal Liability, pursuant to which BWAY commenced monthly installment payments to the Fund, starting on August 1, 2009.

29. The Fund, in its 2014 Assessment attached hereto as Exhibit A, assessed a partial withdrawal against BlueLine based upon an alleged 70% decline in historical contributions, pursuant to which the Fund included the contribution history of BWAY to the Fund prior to its prior withdrawal in 2008. The Fund has since asserted that it considers BWAY and BlueLine to have been members of the same commonly controlled group of trades or businesses at the time of the alleged partial withdrawal. Therefore, the Fund alleges BlueLine and BWAY are jointly and severally liable for the liability as a single employer. PrimeSource is not alleged to have been in the common controlled group at the time of the alleged partial withdrawal underpinning the 2014 Assessment.

9

30. The Fund asserts, in its 2015 Assessment against BlueLine and PrimeSource, attached hereto as Exhibit B, that an alleged partial withdrawal occurred when PrimeSource ceased to have any obligation to contribute to the Fund. The Fund has asserted that it considers BWAY, PrimeSource and BlueLine to have been members of the same commonly controlled group of trades or businesses at the time of the alleged partial withdrawal. Therefore, the Fund alleges that BWAY, PrimeSource and BlueLine are jointly and severally liable for the liability as a single employer.

31. The Fund asserts, in its 2018 Assessment against BlueLine and PrimeSource, attached hereto as Exhibit C, that a complete withdrawal occurred when BlueLine ceased to have any obligation to contribute to the Fund. The Fund asserts that PrimeSource and BlueLine were members of the same commonly controlled group of trades or businesses at the time of the withdrawal. Therefore, the Fund alleges that BlueLine and PrimeSource are jointly and severally liable for the alleged complete withdrawal liability as a single employer. BWAY is not alleged to have been part of the same commonly controlled group of trades or businesses at the time of the alleged complete withdrawal.

32. Pursuant to Section 4219(b)(2)(A) of ERISA, United Rentals and PrimeSource jointly made a timely request for review of the 2014, 2015, and 2018 Assessments in April 2019.

33. Pursuant to Section 4219(b)(2)(A) of ERISA, Mauser Packaging Solutions, on behalf of its commonly controlled trades or businesses, including BWAY, submitted a timely request for review of the 2014 and 2015 Assessments in May 2019.

34. The Fund has been provided with the details of the ownership of BWAY, PrimeSource, and BlueLine. Notwithstanding the receipt of this information, the Fund has failed to rescind or revise the Notices, nor has the Fund withdrawn its assertion that BWAY,

10

PrimeSource, and BlueLine were part of the same controlled group at the time of the alleged partial and complete withdrawals asserted by the Fund.

35. Plaintiffs have each asserted that they are not part of a controlled group of trades or businesses. The question of whether they are a single employer under the controlled group rules under Section 4001(b) of ERISA for purposes of the Notices is not subject to the jurisdiction of the dispute resolution procedures set forth under ERISA, 29 U.S.C. § 1401(a)(1). All other issues raised in the applicable requests for review, other than the issues asserted in this Complaint, will be addressed through arbitration.

## COUNT I—DECLARATORY RELIEF

36. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 35 as if fully set forth herein.

37. Plaintiffs bring this claim under 29 U.S.C. § 1451(a)(1) because they are adversely affected by the act or omission of Fund's 2014, 2015 and 2018 Assessments and for appropriate legal or equitable relief, or both, including for declaratory judgment under Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201, 2202.

38. An actual, justiciable controversy exists between the parties as to whether Plaintiffs were part of a commonly controlled group of trades or businesses such that they constituted a "single employer" within the meaning of the MPPAA.

39. Under the MPPAA, an "employer" who fails to timely initiate arbitration may be deemed to have waived all defenses it could have raised in arbitration. *Cent. States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1373 (7th Cir. 1992). Further, when no arbitration proceeding is initiated, the plan may declare a default in writing and bring an action in court to accelerate the entire amount of withdrawal liability asserted to be due and owing, plus accrued interest. 29 U.S.C. § 1399(c)(5). Moreover, if an "employer" fails to make timely interim

11

payments, it is considered delinquent in the making of a contribution within the meaning of ERISA, 29 U.S.C. § 1145, and is subject to suit with an award of penalties, costs and attorneys' fees if the fund commences a collection action. 29 U.S.C. § 1401(d); 29 U.S.C. § 1132(g).

40. Plaintiffs have been, and will continue to be, adversely affected by the Fund's acts because, among other things, they face arbitrating withdrawal liability assessments to which they are not a party as they are not the employer, the risk of being found delinquent or in default, and suffering penalties, as described above, unless the Court declares the parties' rights and resolves this controversy with finality.

41. Plaintiffs are entitled to a judgment declaring that: (a) because they were not members of a commonly controlled group of trades or businesses they could not be treated as a single "employer" under MPPAA for purposes of the 2014, 2015 and 2018 Assessments; (b) BWAY, along with all of BWAY's commonly controlled trades or businesses, were not a "single employer" together with BlueLine and/or PrimeSource under the MPPAA as to the 2014, 2015 and 2018 Assessments, and thus BWAY, along with all of BWAY's commonly controlled trades or businesses, are not liable for any such withdrawal liability, have no obligation to pay such liability, and are not subject to arbitration under the MPPAA with respect to the 2014, 2015 or 2018 Assessments; (c) BlueLine and its commonly controlled trades or businesses were not a "single employer" with PrimeSource under the MPPAA as to the 2015 Assessment, and thus BlueLine and its commonly controlled trades or businesses are not liable for any such withdrawal liability, have no obligation to pay such liability, and are not subject to arbitration under the MPPAA with respect to the 2015 Assessment; and (d) PrimeSource and its commonly controlled trades or businesses are not a "single employer" under the MPPAA with BlueLine as to the 2018 Assessment, and thus PrimeSource and its commonly controlled trades or businesses are not liable

for any such withdrawal liability, have no obligation to pay such liability, and are not subject to arbitration under the MPPAA with respect to the 2018 Assessment.

42. Plaintiffs are also entitled to a judgment enjoining the Fund, preliminarily and permanently, from taking any action to enforce its assertion that: (a) Plaintiffs were obligated to request review of, or arbitrate, their "employer" status (including through application of the controlled group rules under Section 4001(b)(1) of ERISA); (b) Plaintiffs were members of a commonly controlled group of trades or businesses and, thus, could be treated as a "single employer" under the MPPAA for purposes of the 2014, 2015 or 2018 Assessments; (c) BWAY was part of a commonly controlled group of trades or businesses with BlueLine, such that they are an employer jointly and severally liable for the 2014 Assessment, obligated to pay such liability, and/or subject to arbitration under the MPPAA with respect to the 2014 Assessment; (d) BWAY is part of a commonly controlled group of trades or businesses with BlueLine and/or PrimeSource such that they are jointly and severally liable for the 2015 Assessment, obligated to pay such liability, and/or subject to arbitration under the MPPAA with respect to the 2015 Assessment; (e) BlueLine was part of a commonly controlled group of trades or businesses with PrimeSource, such that BlueLine is an employer jointly and severally liable for the 2015 Assessment, obligated to pay such liability, and/or subject to arbitration under the MPPAA with respect to the 2015 Assessment; and (f) PrimeSource was part of a commonly controlled group of trades or businesses with BlueLine, such that PrimeSource is jointly and severally liable for the 2018 Assessment, obligated to pay such liability, and/or subject to arbitration under the MPPAA with respect to the 2018 Assessment.

43. Plaintiffs are also entitled to a judgment ordering the Fund to revise the 2014, 2015, and 2018 Assessments as necessary to remove those Plaintiffs who are not commonly controlled

13

trades or businesses, and to refund with interest to the Plaintiffs any and all withdrawal liability payments or parts of payments that would not have been made but for the Fund's treatment of the Plaintiffs as commonly controlled trades or businesses.

44. The requested judgment from this Court declaring the rights and responsibilities of the parties will resolve the current controversies and is an appropriate exercise of this Court's discretion pursuant to 28 U.S.C. § 2201.

45. In addition, Plaintiffs are entitled to recover their attorneys' fees and costs incurred in connection with this lawsuit pursuant to 29 U.S.C. § 1451(e).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following findings:

1. That neither BWAY, PrimeSource nor BlueLine were members of a commonly controlled group of trades or businesses and thus cannot be treated as a "single employer" under the MPPAA for purposes of the 2014, 2015 and 2018 Assessments.

2. That BWAY, along with all of BWAY's commonly controlled trades or businesses, were not a "single employer" together with BlueLine and/or PrimeSource under the MPPAA as to the 2014, 2015 and 2018 Assessments, and thus BWAY, along with all of BWAY's commonly controlled trades or businesses, are not liable for any such withdrawal liability, have no obligation to pay such liability, and are not subject to arbitration under the MPPAA with respect to the 2014, 2015 or 2018 Assessments.

3. That BlueLine and its commonly controlled trades or businesses were not a single "employer" with PrimeSource under the MPPAA as to the 2015 Assessment, and thus BlueLine and its commonly controlled trades or businesses are not liable for any such withdrawal liability, have no obligation to pay such liability, and are not subject to arbitration under the MPPAA with respect to the 2015 Assessment.

4. That PrimeSource and its commonly controlled trades or businesses were not a "single employer" with BlueLine under the MPPAA as to the 2018 Assessment, and thus PrimeSource and its commonly controlled trades or businesses are not liable for any such withdrawal liability, have no obligation to pay such liability, and are not subject to arbitration under the MPPAA with respect to the 2018 Assessment.

5. That the Fund be enjoined, preliminarily and then permanently, from taking any action to enforce its assertion that: (a) Plaintiffs were obligated to request review of, or arbitrate, their "employer" status; (b) Plaintiffs were members of a commonly controlled group of trades or businesses and, thus, could be treated as a "single employer" under the MPPAA for purposes of the 2014, 2015 or 2018 Assessments; (c) BWAY was part of a commonly controlled group of trades or businesses with BlueLine, such that they are an employer jointly and severally liable for the 2014 Assessment, obligated to pay such liability, and/or subject to arbitration under the MPPAA with respect to the 2014 Assessment; (d) BWAY was part of a commonly controlled group of trades or businesses with both BlueLine and/or PrimeSource, such that BWAY is jointly and severally liable for the 2015 Assessments, obligated to pay such liability, and/or subject to arbitration under the MPPAA with respect to the 2015 Assessment; (e) BlueLine was part of a commonly controlled group of trades or businesses with PrimeSource, such that BlueLine is an employer jointly and severally liable for the 2015 Assessment, is obligated to pay such liability, and/or subject to arbitration under the MPPAA with respect to the 2015 Assessment; and (f) PrimeSource was part of a commonly controlled group of trades or businesses with BlueLine, such that PrimeSource is jointly and severally liable for the 2018 Assessment, is obligated to pay such liability, and/or subject to arbitration under the MPPAA with respect to the 2018 Assessment.

6. That the Fund be ordered to revise the 2014, 2015, and 2018 Assessments as necessary to remove those Plaintiffs who are not commonly controlled trades or businesses, and refund the Plaintiffs with interest for any and all withdrawal liability payments or parts of payments that would not have been made but for the Fund's treatment of the Plaintiffs as commonly controlled trades or businesses.

7. That the Court enter judgment in Plaintiffs' favor and grant such other equitable and legal relief as the Court deems just and proper, including awarding Plaintiff their reasonable attorneys' fees and costs incurred in this action.

Dated: October 11, 2019　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　BWAY CORPORATION, UNITED RENTALS, INC., PRIMESOURCE BUILDING PRODUCTS, INC.


　　　　　　　　　　　　　　　　　　　　By: */s/ Patrick W. Spangler*
　　　　　　　　　　　　　　　　　　　　　　Patrick W. Spangler
　　　　　　　　　　　　　　　　　　　　　　pspangler@vedderprice.com
　　　　　　　　　　　　　　　　　　　　　　Alex C. Weinstein
　　　　　　　　　　　　　　　　　　　　　　aweinstein@vedderprice.com
　　　　　　　　　　　　　　　　　　　　　　VEDDER PRICE P.C.
　　　　　　　　　　　　　　　　　　　　　　222 N. LaSalle Street, Suite 2600
　　　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60601
　　　　　　　　　　　　　　　　　　　　　　Telephone: (312) 609-7500

　　　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　　　　　　UNITED RENTALS, INC.

　　　　　　　　　　　　　　　　　　　　By: */s/ Ronald Kramer*
　　　　　　　　　　　　　　　　　　　　　　Ronald Kramer
　　　　　　　　　　　　　　　　　　　　　　rkramer@seyfarth.com
　　　　　　　　　　　　　　　　　　　　　　Dion Beatty
　　　　　　　　　　　　　　　　　　　　　　dbeatty@seyfarth.com
　　　　　　　　　　　　　　　　　　　　　　SEYFARTH SHAW LLP
　　　　　　　　　　　　　　　　　　　　　　233 S. Wacker Drive, Suite 8000
　　　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60606
　　　　　　　　　　　　　　　　　　　　　　Telephone: (312) 460-5000
　　　　　　　　　　　　　　　　　　　　　　Facsimile: (312) 460-7000

　　　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　　　　　　BWAY CORPORATION

　　　　　　　　　　　　　　　　　　　　By: */s/ Deborah Davidson*
　　　　　　　　　　　　　　　　　　　　　　Randall McGeorge
　　　　　　　　　　　　　　　　　　　　　　randy.mcgeorge@morganlewis.com
　　　　　　　　　　　　　　　　　　　　　　MORGAN LEWIS & BOCKIUS LLP
　　　　　　　　　　　　　　　　　　　　　　1 Oxford Centre, 32nd Floor
　　　　　　　　　　　　　　　　　　　　　　Pittsburgh, Pennsylvania 15219
　　　　　　　　　　　　　　　　　　　　　　Telephone: (412) 560-7410
　　　　　　　　　　　　　　　　　　　　　　*\*\*pro hac vice application forthcoming*

　　　　　　　　　　　　　　　　　　　　　　Deborah S. Davidson
　　　　　　　　　　　　　　　　　　　　　　deborah.davidson@morganlewis.com

Tom Severson
tom.severson@morganlewis.com
Morgan, Lewis & Bockius LLP
77 West Wacker Drive
Chicago, IL 60601-5094
Telephone: (312) 324-1159

Attorneys for Plaintiff
PRIMESOURCE BUILDING PRODUCTS, INC.